Filed 3/23/15  P. v. Davis CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE, | D065409 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. JCF26055) |
| RICHARD EDWARD DAVIS, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Imperial County, Poli Flores, Jr., Judge.  Affirmed as modified.

John P. Dwyer, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, Peter Quon, Jr., and Susan Miller, Deputy Attorneys General, for Plaintiff and Respondent.

A jury convicted Richard Davis of first degree murder (Pen. Code, § 187, subd. (a)),[1] and conspiracy to commit murder (§ 182, subd. (a)(1)), and found true the allegation that he personally used a firearm in committing the murder within the meaning of sections 12022.53, subdivision (d), 12022.5, subdivision (a) and 12022, subdivision (a)(1). In a bifurcated proceeding, the court found true three prior strike conviction allegations. The court imposed a sentence of 100 years to life. On appeal, Davis argues the court abused its discretion when it denied his motion to dismiss the jury panel based on the taint to the entire panel caused when a juror revealed during voir dire allegedly prejudicial information about Davis.[2]

## FACTS

The victim, Stephen Cooke, was the boyfriend of Ann Polson. Davis worked for Cooke. Cooke and Polson lived in a camper-trailer in "Slab City" in Imperial County, and Davis lived in a camper-trailer about 75 feet from them.

On September 19, 2010, around 10:30 p.m., Davis and Polson called 911 and reported Cooke had been shot. Imperial County Deputy Sheriff Lopez responded to the call. When Lopez arrived, he found Davis and Polson outside Cooke's trailer; Davis was calm but Polson was hysterical. Davis told Lopez Cooke had been shot. Lopez went inside and found Cooke sitting in a chair in a television area; he had a bullet hole in the

---

[1] All further statutory references are to the Penal Code unless otherwise specified.

[2] Davis also contends, and the People concede, Davis was entitled to one extra day of custody credit, and we agree with that contention. Davis also contends, and the People concede, the abstract of judgment must be amended to delete the firearm enhancements associated with the conspiracy conviction, and we agree with that contention. Accordingly, we order the abstract of judgment corrected to reflect these facts.

2

back of his head.  Cooke was still holding a playstation controller in his hands (connected to a television that was still on) and was wearing a gun.

Davis told Lopez that he had been with Cooke and Polson earlier that evening but had left around 10:00 p.m. to go back to his trailer.  He told Lopez he heard a shot about 15 minutes later, looked outside and saw someone running, and heard Polson screaming, so he ran to Cooke's trailer.  He found the body and, when Polson was unable to call 911, he did so.  He also told Lopez that Cooke had been acting weird and paranoid that day and was carrying a gun.

Sergeant Erro reinterviewed Davis the following morning at the police department and Davis initially repeated the same story with a calm demeanor.  However, after Erro said he had spoken with Polson and that she had been very truthful with him, Davis's demeanor changed and he stated "the truth is last night I did it.  I guess I'm going to jail." Davis told Erro that after watching television with Cooke, he returned to his trailer and prayed to God about what to do.  He decided to kill Cooke and therefore got his (Davis's) gun, cocked it, and walked back to Cooke's trailer.  He shot Cooke and then ran back to his trailer.  When he heard Polson screaming, he ran back to Cooke's trailer, and called 911.  Davis gave the gun (a .22 caliber handgun) to Polson, who buried it.[3]  Polson also washed Davis's hands with bleach.

Davis had several prior conversations with Polson about killing Cooke, and she knew Davis was going to kill Cooke.  The morning of the murder, he told Polson "tonight's the night."  Davis told police Cooke physically abused Polson, including biting

[3]    Polson later pointed out the location of the gun to police.

her on several occasions, and also stated Cooke was verbally abusive and treated them "like slaves."

Police found an expended .22 caliber casing underneath the chair where Cooke was shot. Police also found a half-empty bottle of bleach about 100 feet from Cooke's body.

The defense presented no evidence. Defense counsel argued Davis was guilty only of manslaughter because he genuinely but unreasonably believed Polson's life was in imminent danger, he had to use deadly force to protect her and there was no conspiracy.

ANALYSIS

The Trial Court Did Not Abuse Its Discretion in Denying Davis's Motion to Dismiss the Entire Jury Panel

Davis argues the court abused its discretion when it denied his motion to dismiss the entire jury panel because the panel heard inflammatory statements by a potential juror during voir dire, which precluded him from obtaining an impartial jury.

*Background*

During voir dire, prospective juror Tumamao revealed she worked as a corrections clerk at the Imperial County Jail. She stated she worked inside the jail, and "I work in where they book them in. I work with their money, I do the intake. I do when they are getting released, when they're sentenced, when they're housed, go through their mail." She later told the court she had a brother-in-law who was a police officer and a cousin incarcerated in the county jail. When asked if there was anything that might cause her

4

not to be fair, she stated, "It's just that I do see the defendant all the time. . . . [¶] . . . [¶] The first day of jury selection, I was the one who opened the door and let him in." When the court asked whether she recognized Davis, she stated, "Yes, I do." The court then asked if she had spoken to Davis, and she stated, "I don't. I talk to his attorney, though, when he comes to the window all the time." The court followed up by asking "So, [defense counsel] has other clients around[?]" and she responded, "Yes." She also told the court she helped arrange for attorney-client visits at the jail. These statements were made in the presence of the panel being selected for Davis's trial.

A few minutes later, out of the presence of the jury panel, defense counsel moved to dismiss the entire panel. Defense counsel argued he had asked that Davis be dressed in civilian clothes in an effort to avoid the taint that could accompany the jury's knowledge Davis was an inmate, and prospective juror Tumamao's statements that Davis was currently an inmate undermined the effort to avoid that taint. The prosecutor argued prospective juror Tumamao's statements were very indirect, because those statements did not directly state Davis was currently incarcerated, nor did she state she saw defense counsel visiting Davis while he was incarcerated, and therefore any conclusion as to Davis's current custodial status would require inferences. The court agreed prospective juror Tumamao's statements would permit an inference she had encountered Davis while he was in custody, but the court concluded it did not believe that inference would be enough to undermine the integrity of the process or taint the other jurors' minds to the point the impartiality of the other jurors would be undermined. The court denied the defense motion and resumed voir dire.

5

*Applicable Law*

A defendant is entitled to a fair trial by a panel of impartial jurors. (*In re Hitchings* (1993) 6 Cal.4th 97, 110. When a prospective juror makes arguably inflammatory remarks during voir dire, it is within the discretion of the trial court to grant or deny a motion to dismiss an entire jury panel based on comments made by a prospective juror that allegedly exposed the jury panel to bias or prejudice, and we may not reverse that determination unless we can conclude the court abused its discretion (*People v. Nguyen* (1994) 23 Cal.App.4th 32, 41-42), because "the trial judge is in a better position to gauge the level of bias and prejudice created by juror comments [during voir dire]." (*People v. Martinez* (1991) 228 Cal.App.3d 1456, 1466.) Dismissing an entire panel is a "drastic remedy [not] appropriate as a matter of course merely because a few prospective jurors have made inflammatory remarks. Unquestionably, further investigation and more probing voir dire examination may be called for in such situations, but discharging the entire venire is a remedy that should be reserved for the most serious occasions of demonstrated bias or prejudice, where interrogation and removal of the offending venirepersons would be insufficient protection for the defendant." (*People v. Medina* (1990) 51 Cal.3d 870, 889.)

*Analysis*

Davis argues the trial court abused its discretion because the comments revealed his custodial status and this prejudicial fact, like the analogous prejudicial taint of requiring a defendant to wear jail clothing during trial (*People v. Taylor* (1982) 31 Cal.3d 488, 494-495), undercut the presumption of innocence by creating an unacceptable risk

6

that the jury would impermissibly consider this factor rather than basing its decision solely on the evidence adduced at trial. We are not persuaded. Prospective juror Tumamao's statements were isolated and made in passing, and showed at most that Davis was in custody for some undefined duration or reason. Unlike the concerns articulated by *Taylor,* at page 494, which observed that jail clothing worn during the course of a trial "is a constant reminder to the jury that the defendant is in custody" "which distracts the jury from attention to permissible factors relating to guilt . . . [and] only serves to brand the defendant as someone less worthy of respect and credibility than others in the courtroom," prospective juror Tumamao's statements were isolated and, moreover, occurred during voir dire rather than during trial. In *People v. Valdez* (2004) 32 Cal.4th 73, 121, the court distinguished evidence tending to show a defendant was incarcerated from a defendant compelled to wear jailhouse clothing, explaining:

> "The cases relied upon by defendant merely hold that a defendant may not be compelled to wear prison clothing during his or her trial. The reason, as correctly pointed out by defendant, is that such clothing serves as 'a constant reminder' that the defendant is in custody. [Citation.] But this rule has nothing to do with the facts of this case. Prison clothing reminds the jury of the defendant's custodial status, but at the same time has absolutely no probative value with respect to the merits of the case. Here, the escape evidence was probative of defendant's consciousness of guilt relating to the murder and did not serve as 'a constant reminder' of defendant's custodial status. *Moreover, the mere fact that the jury is made aware of a defendant's custodial status does not deprive the defendant of his constitutional rights.* As we pointed out in *People v. Bradford* (1997) 15 Cal.4th 1229 . . . 'in certain circumstances a jury inevitably will learn a defendant is in custody for the current charged offense, for example where the jury is presented with the testimony of a jailhouse informant.' [(*Bradford, supra,* at p. 1336.)]" (Italics added.)

7

We are satisfied that the isolated comment by prospective juror Tumamao, which revealed at most the rather unremarkable fact that Davis was in custody for some undefined duration or reason, did not compel the drastic remedy of dismissing the entire panel.  Because the potentially tainted venireperson was dismissed from the panel and the remaining voir dire provided ample opportunity for Davis to probe for and protect against any de minimus taint that prospective juror Tumamao's comment might have engendered, we do not conclude it was an abuse of discretion to deny the motion to discharge the entire jury panel.

## DISPOSITION

The trial court is directed to prepare a modified and corrected abstract of judgment showing Davis is entitled to 1,228 days of custody credit and to delete the firearm enhancements associated with the conspiracy conviction, and to forward a certified copy of the corrected abstract of judgment to the Department of Corrections.  As so modified, the judgment is affirmed.

McDONALD, J.

I CONCUR:

NARES, Acting P. J.

I CONCUR IN THE RESULT:

AARON, J.

8